UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | REPORT AND RECOMMENDATION |
| v. | |
| TENG SUN, | 19-CR-00135-EAW-JJM |
| Defendant. | |

_____

Defendant Teng Sun is charged with being an illegal alien in possession of a firearm, in violation of 18 U.S.C. §§922(g)(5)(A) and 924(a)(2). Indictment [12].[1] Before the court is Sun's motion to suppress his statements concerning the possession of firearms, as well as the seizure of those firearms from his home, on March 14, 2019 [29], ¶¶67-89.[2] An evidentiary hearing was held on June 15, 2020 [70] and March 30, 2021 [66], at which I heard testimony from U.S. Immigration and Customs Enforcement ("ICE") officers Frank Farkas and Lisa Corsi, Sun's former attorney Dominic Saraceno, and Sun himself. Having considered the parties' submissions [29, 30, 32, 71, 72, 73, 74] and heard oral argument on June 28, 2021 [75], for the following reasons I recommend that the motion be granted.

## FACTS

Sun is a citizen of the People's Republic of China. [56-1] at 3. On January 17, 2019, he was charged with violating §237(a)(1)(B) of the Immigration and Nationality Act by

---

[1] Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

[2] Although Sun's motion also sought other forms of relief, at oral argument his attorney confirmed that those issues have been resolved.

staying in this country beyond the term of his visa. Id. He was also facing state charges for, *inter alia*, violating N.Y. Penal Law §265.01(5) (possession of a dangerous or deadly weapon by a non-citizen). Id. at 6.

On March 14, 2019 Sun appeared in Royalton Town Court for proceedings on the state Penal Law charges. Id. at 4. Officer Corsi testified that "he came on to our radar, because of a gun charge . . . . [I]t came to our attention that he would be in court that day and he was out of status. So we went to the courthouse and we planned on taking him into custody after his work was done at the courthouse . . . . [W]e explained why we were there and we took him into custody". [70] at 30-31.

Sun was placed in handcuffs ([66] at 33) and driven to his home by ICE personnel in order to retrieve his wife's passport. Officer Corsi testified that as they approached the home she asked him "if there was anything in the home that would . . . potentially hurt us", and he replied "that he had other firearms in the home". Id. at 8-9. She admitted that she asked him about guns even though she knew it was illegal for him to possess them (id. at 12), stating that she believed he had been Mirandized (*see* Miranda v. Arizona, 384 U.S. 436 (1966)) by her partner, Officer Sukmanowski, before they left the Town of Royalton courthouse. Id. at 13. However, Officer Sukmanowski did not testify at the hearing, and the incident report [65-1] does not indicate that he Mirandized Sun. By contrast, Sun testified that his statement about possessing guns was not in response to a question by Officer Corsi, but was instead in response to questioning by one of the ICE officers who had seen his hunting license among the papers which were taken from him. [66] at 50. He denies that he had been Mirandized prior to that time. Id.

Upon arrival at Sun's home, he met Officer Farkas, who took him into the residence. [70] at 8-9. As they entered the home, Officer Farkas testified that he immediately noticed "two large storage cases, which in my training and experience we call them pelican cases, which are used to store weapons or weapon parts, as well as small cardboard boxes on top of them, which clearly had weapons parts in them . . . . Once I saw those pelican cases, things started . . . made me a little bit nervous . . . . I did Mirandize him after that, because I wanted to question him to being an alien out of status . . . possibly in possession of firearms." Id. at 9. "[A]fter I Mirandized him, I asked him if he had firearms in the home. He stated that he did." Id. at 10.

Sun then executed a document giving "consent to enter my residence to retrieve the firearms that are in my possession". [65-2]. When asked "Does this consent say anything about searching the garage?", Farkas replied "It does not". Nevertheless, he admitted that he searched the garage and found several weapons located therein. [70] at 25.

Sun disputes much of Officer Farkas' testimony, stating that he was not asked to sign the consent until after the search had already occurred ([66] at 52, 55), and that he was pressured into signing by threats "that they'd lock me up in prison for years. And . . . I won't be able to see my family and my wife and family forever". Id. at 51.

## DISCUSSION

The conflicting hearing testimony raises serious credibility issues which I need not resolve - for even if the testimony of the government's witnesses is credited, it has failed to satisfy its burden on this motion.

A.  **Custodial Statements**

The government argues that "the issue in this case is singular: 1. Whether the defendant voluntarily consented to ICE's search of 5634 Sheridan Drive". Government's Post-Suppression Hearing Brief [71] at 5. However, that is *not* the only issue: Sun also argues that "[a]ny statements made by [him] should also be suppressed as he was clearly in custody, represented by counsel and never mirandized". [29], ¶89; Sun's Post-Hearing Memorandum [72] at 8-11.

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way . . . . Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Miranda, 384 U.S. at 444.

In response to questioning by ICE officials, Sun stated on two occasions - in the car on the way to his home and again upon arrival at his home - that he was in possession of firearms. It is undisputed that he was in custody (arrested and in handcuffs) at the time he made those statements. Since ICE officials knew that he was facing gun charges in Royalton Town Court, any answer to those questions could conceivably be incriminatory. Therefore, it was incumbent on the government to demonstrate that proper Miranda warnings had been provided. United States v. Seldinas, 2015 WL 1823532, *5 (W.D.N.Y. 2015) ("[t]he Government bears the

burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of the Miranda doctrine").

Officer Corsi's testimony as to her belief that Sun had been Mirandized by Officer Sukmanowski (who did not testify), and Officer Farkas' testimony that he Mirandized Sun, are both clearly insufficient to satisfy the government's burden of proof. "Without any testimony as to what rights were told to defendant, or testimony that the officer relied on a pre-printed form or card, the Court has no basis upon which to conclude that defendant was given the proper warnings". Seldinas, *5. Nor does Officer Farkas' testimony that he "read Mr. Sun his Miranda rights" ([70] at 28) cure that defect, since "a mere reference to reading Miranda rights is not sufficient evidence". Id.; United States v. Magana, 2007 WL 680784, *6 (D. Nev. 2007).

In fact, when asked to "explain to the Court, for the record, what is encompassed in a . . . defendant's Miranda right", Officer Farkas offered an incomplete explanation of that right: "It basically says that he doesn't have to answer our questions. He does it free - free and willing. He has the right to an attorney. If he can't afford one, one will be provided for him". [70] at 28. He omitted one of the most important warnings: "The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court. This warning is needed in order to make him aware not only of the privilege, but also of the consequences of forgoing it." Miranda, 384 U.S. at 469.

Since the government has failed to demonstrate that Sun was properly Mirandized, I recommend that his statements as to his possession of firearms be suppressed.

B.	**Warrantless Search**

"[W]hen . . . the government relies on consent to justify a warrantless search, it bears the burden of proving by a preponderance of the evidence that the consent was voluntary." United States v. Snype, 441 F.3d 119, 131 (2d Cir. 2006). "Voluntariness is determined by reference to the totality of all the circumstances." Id. "The fact of custody does not alone preclude the giving of a voluntary consent . . . but it should require more careful scrutiny." United States v. Wiener, 534 F.2d 15, 17 (2d Cir. 1976).

Sun argues that the search of his residence and garage "was the result of unlawful police conduct and the fruits thereof must be suppressed as the fruit of the poisonous tree". Sun's Post-Hearing Memorandum [72] at 10, citing Wong Sun v. United States, 371 U.S. 471 (1963). "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Id. at 487-88.

Here, ICE acted unlawfully in obtaining custodial statements from Sun in violation of Miranda's requirements. The question, then is whether the consent search was tainted by that conduct. Officer Farkas testified that upon entering Sun's home, he became "a little bit nervous" upon seeing the pelican cases, which he suspected might be used to store guns. [70] at 9. He claims to have Mirandized Sun after that because "I wanted to question him to being an alien out of status . . . possibly in possession of firearms . . . . [A]fter I Mirandized him,

I asked him if he had firearms in the home. He stated that he did." Id. at 9, 10. Only *then* did he seek Sun's consent to search.

"The Government bears the burden of proving a break in the causal chain" between the illegal confession and the subsequent search. United States v. Ceballos, 812 F.2d 42, 50 (2d Cir. 1987). In other words, it must "prov[e] that the taint has been alleviated". United States v. Clark, 822 F. Supp. 990, 1006 (W.D.N.Y. 1993). Since Officer Farkas sought and obtained Sun's consent to search only after he was illegally interrogated, I conclude that the government has not met that burden. Therefore, the evidence obtained from the search of Sun's residence and garage must be suppressed.

## CONCLUSION

For these reasons, I recommend that Sun's motion to suppress ([29], ¶¶67-89) be granted. Unless otherwise ordered by Judge Wolford, any objections to this Report and Recommendation must be filed with the clerk of this court by July 15, 2021. Any requests for extension of this deadline must be made to Judge Wolford.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision".  Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(b)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated: July 1, 2021

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge